[See Case No. 12,053.]

---

## Case No. 13,495.

### STORRS v. HOWE et al.

[2 Ban. & A. 420; 4 Cliff. 388; 10 O. G. 421.] [1]

Circuit Court, D. Massachusetts. Sept. 2, 1876.

PATENTS — INFRINGEMENT—CONFLICTING PATENTS —MECHANICAL EQUIVALENTS.

1. In a suit brought for the infringement of letters patent, one of the defendants appeared and filed an answer, in which he alleged that two valid patents were granted to him, which he still holds and which, as he alleged, were granted to him for inventions of which he was the original and first inventor. Having described these patents, he admitted that he had caused machines, for the same purpose as complainant's machines to be made and sold for use in accordance with those patents, but he denied that in such acts he had infringed the patent of the complainant. He also denied infringement in any and every form in which it was charged in the bill of complaint: *Held*, that, under these pleadings, the complainant having made prima facie proof that he was the original and first inventor of the improvement, which he could do by the introduction in evi-

¹ [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and by William Henry Clifford, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 2 Ban. & A. 420, and the statement is from 4 Cliff. 388.]

dence of his patent in due form, the only question in the case was whether the patent had been infringed by the defendants.

2. The doctrine of mechanical equivalents discussed.

[Cited in Putnam v. Hutchinson, 12 Fed. 134.]

[This was a bill in equity [by Levi B. Storrs against Patrick Howe and others] for the infringement of certain extended letters-patent granted the complainant for the pressing machine for tailors' use. On the 8th of June, 1858, a patent [No. 20,519] in due form was granted to the complainant, for a new and improved pressing machine for tailors' use, of which he alleged that he was the original and first inventor, and the record showed that the patent was subsequently extended to him for the term of seven years from and after the expiration of the first term. By virtue of the patent there was secured to the complainant, as he alleged, the exclusive right to make, use, and vend to others to be used, the patented machine, and he alleged that the respondents had, in violation of his exclusive rights, wrongfully made, used, and vended to others to be used, the said invention, and he prayed for an account and for an injunction. Service was made, and the respondent, Patrick Howe, appeared and filed an answer, in which he alleged that two valid patents were granted to him, which he still held, and which, as he alleged, were granted to him for inventions of which he was the original and first inventor, as follows: one dated Oct. 10, 1871, for an improvement in clothes-pressing machines, the other dated Dec. 12, 1871, for an improvement in machines for pressing cloth. Having described these patents, he admitted that he had caused machines for pressing cloth to be made, and sold for use in accordance with those patents, but he denied that in such acts he had infringed the patent of the complainant. He further denied infringement in any and every form in which it was charged in the bill of complaint.] [2]

C. H. Drew, for complainant.
J. S. and J. E. Abbott, for respondents.

CLIFFORD, Circuit Justice. Equivalents are allowed in an invention consisting of a combination of old ingredients, as well as in every other class or description of inventions. Such an invention consists entirely in the combination, and the rule is that the rights of the patentee under it differ in one respect from those of a patentee of an invention that consists of an entire machine, or of a new and useful device, as the rights of a patentee for a mere combination of old ingredients are not infringed unless it appears that the alleged infringer made or used the entire combination. Prouty v. Ruggles, 16 Pet. [41 U. S.] 341. Combinations of the kind include not only the ingredients described in the patent, but equivalents also, by which is meant any other ingredients

² [From 4 Cliff. 388.]

which will perform the same function as the one described, and which were well known at the date of the patent as proper substitutes for the ones actually described in the patent. Gill v. Wells, 22 Wall. [89 U. S.] 28.

On the 8th of June, 1858, a patent in due form was granted to the complainant for a new improved pressing-machine for tailors' use, of which he alleges that he is the original and first inventor, and the record shows that the patent was subsequently extended to him for the term of seven years from and after the expiration of the first term. By virtue of the patent there was secured to the complainant, as he alleges, the exclusive right to make, use and vend to others to be used, the patented machine, and he alleges that the respondents have, in violation of his exclusive rights, wrongfully made, used and vended to others to be used, the said invention, as more fully set forth in the bill of complaint, and he prays for an account and for an injunction. Service was made, and the respondent, Patrick Howe, appeared and filed an answer, in which he alleges that two valid patents were granted to him, which he still holds, and which, as he alleges, were granted to him for inventions of which he was the original and first inventor, as follows: one dated October 10, 1871, for an improvement in clothes-pressing machines, the other dated December 12, 1871, for an improvement in machines for pressing cloth. Having described these patents, he admits that he has caused machines for pressing cloth to be made and sold for use in accordance with those patents; but he denies that in such acts he has infringed the patent of the complainant. Superadded to that, he denies infringement in any and every form in which it is charged in the bill of complaint. Persons seeking redress for the unlawful use of letters patent are obliged to allege and prove that they, or those under whom they claim, are the original and first inventors of the improvement, and that the patent has been infringed by the party against whom the suit is brought. Both of these allegations must be established by the party instituting the suit; but the law is well settled that the patent in question, if it is introduced in evidence, and is in due form, affords a prima facie presumption that the first-named allegation is true, and it is equally well settled that that presumption, in the absence of satisfactory proof to the contrary, is sufficient to entitle the party instituting the suit to recover for the alleged violation of his exclusive rights. Seymour v. Osborne, 11 Wall. [78 U. S.] 538.

Tested by that rule it is as clear as anything in legal decision can be, that the only question in this case is whether the allegation of infringement is proved. Such a charge being an affirmative allegation made by the complainant, the burden of proof is upon him to establish it, unless it is admitted in the answer. Agawam Co. v. Jordan, 7 Wall.

[74 U. S.] 609. Sufficient appears in the specification and drawings to show that the invention consists in attaching, by a universal joint, a goose, or tailor's iron to a jointed arm, the arm and other parts being constructed as therein shown, and connected to the treadle, the same being attached to a proper frame, and used in connection with a press-board, the whole being so arranged that the manipulation of the goose or iron is greatly facilitated, whereby the work to be ironed may be subjected to a heavy or light pressure, as may be desired, with a slight exertion or expenditure of power by the operator. Of course it must have a platform, which must be supported at the proper height by a suitable frame, which may be constructed of wood or iron. Particular description is given of each part of the machinery, from which it appears that the lever is a very essential ingredient, being of cast-iron, its lower end being connected by a link to the lower end of a bent lever, which is attached to a treadle. From the same it also appears that the bent lever is attached to the lower part of the frame by a fulcrum pin, and that a vertical rod is attached to the treadle, and that a cross-plate is attached to the upper end of the rod, and that the cross-plate rests on the upper ends of two spiral springs, which are fitted on guide-rods, the lower ends of the springs resting on a cross-piece, to which the guide-rods are attached, the cross-piece being attached to the frame. One of the functions of the spiral springs is to keep the treadle elevated, and, consequently, the upper end of the bent lever is thrown backward from the platform as far as it is allowed to move. Two horizontal lifts are formed in the upper end of the bent lever, between which a jointed arm is attached by a screw, which passes through those lips and through the jointed arm, the screw fitting in a thread in the jointed arm, and the screw has a crank on its upper end. All these particulars are given in the specification, and the patentee states that the goose or iron is attached by a universal joint to the outer end of the jointed arm, the joint being formed by pivoting a sphere or ball in a fork, the shank of which is fitted and allowed to turn freely in the jointed arm. to which the patentee adds that the goose is provided at the centre of its upper part with a vertical spindle, which passes through the sphere or ball in which it is allowed freely to turn, and that the goose is hollow, and is heated by means of hot irons placed within it. Connected with the machinery is a press-board, one end of which is secured in proper position on the platform by means of a clamp, which is formed of a jaw actuated by a cam being pivoted at the upper end of a described standard, and directly over a stationary jaw, attached to a standard. Description is also given of the means of supporting the other end of the press-board; but it is sufficient to say that the means described show that the

platform may be adjusted under any part of the press-board. Very satisfactory description also is given of the mode of operating the machine in substance and effect, as follows: that the cloth or garment to be pressed is placed on the press-board, that the goose, being properly heated, is pressed down on the work to be operated by depressing the treadle with the foot, it appearing that the goose may be moved over the cloth in any direction in consequence of its described connection with the jointed arm. Perfect freedom of the goose is obtained, and as the foot of the operator is employed for giving pressure to the iron, and the hands are only employed for moving it, the desired work may be performed very effectually, a greater pressure being obtained and the goose manipulated with much greater facility than when the hands alone are employed for performing the work. By turning the screw the jointed arm may be raised or lowered, and the standard or support, by being movable, allows work that is sewed at the edge to be slipped over on the press-board, as shown in drawings, which is a great convenience.

What he claims as new is: (1) the lever, the jointed arm, the goose, and the treadle, when connected together, and arranged relatively with each other and the press-board, so as to operate as and for the purpose set forth. (2) He also claims the particular manner of connecting the goose and spindle, which passes loosely through the sphere or ball of the universal joint, whereby the goose is allowed an independent rotary movement; but he does not claim the sphere or ball, nor the fork with its shank fitting in the jointed arm; instead of that it is only the peculiarity attending the connection of the goose to the sphere which he claims, as set forth in the specifications. Briefly stated, the mode of operation is as follows: Pressure being applied to the treadle by the foot of the operator, the same is transmitted through the lever to the jointed arm, so that the goose, which is attached to the forward end of that arm, may be brought down upon the work to be pressed with such degree of force as in the judgment of the operator will be sufficient to accomplish the desired result, which shows that it is pressure upon the treadle which depresses the extreme end of the jointed arm to which the goose is attached, and which causes the goose to accomplish the work described in the specification. All these features, it is claimed by the complainant, are contained in the respondents' machine, and the complainant insists that they operate together as and for the same purpose. Beyond all question the respondents have the press-board, and it is conceded that they have the treadle, the jointed arm, and the goose; but the respondent who filed the answer denies in argument that he uses the lever which constitutes the fourth element in the combination of the complainant.

Differences of a formal character certainly exist in the fourth ingredient or element of the two machines; but it is clear that the lever employed in the machine of the respondents performs the same function as that performed by the lever shown in the complainant's machine, and the better opinion is that the two are substantially alike, differing only as to mere mechanical arrangements. Pressure is transmitted to the jointed arm in both by the foot of the operator applied to the treadle. In the complainant's machine the pressure brings down the link attached at one end of the treadle, and at the other end to the lower end of the lever, and thus brings down the upper end of the lever, to which is attached the jointed arm, the forward extremity of the same, to which the goose is attached, being depressed, and thus the necessary pressure is exerted upon the cloth or garment. Just the same function is performed by the same element or ingredient in the respondents' machine, but the treadle pushes up the forked connecting-link, which takes the place of the link in the complainant's machine, by which action the forward end of the lever, to which the upper end of the lever is attached, is depressed, and the jointed arm, with the goose attached, is thus brought down upon the work exactly in the same manner as in the other machine. Examined in the light of these suggestions, as the case should be, it is clear that there are in each machine substantially the same four elements or ingredients, operating together to produce the same result. Whatever differences exist are to be found in the mode of transmitting motion from the treadle to the lever, to which the jointed arm is connected. In the complainant's patent the lever is described in a perpendicular position, while in the latter it is shown in a horizontal position, which is the controlling difference between the two machines. Enough appears to show that these are mere formal matters, as it is not claimed in either patent that the position of the lever is any part of the invention. These differences in the mechanical arrangements are mere formal variations, producing no new result, and come clearly within the proper range of mechanical equivalents.

Properly construed it is clear from what has already been remarked that the respondents also infringe the second claim of the complainant's patent. Remarks already made show that it is the particular manner of connecting the goose to the arm which is embodied in that claim, by which is meant that the goose or iron is provided with a spindle which passes loosely through the sphere or ball of the universal joint, whereby the goose is allowed an independent rotary movement subject to the before-mentioned disclaimer. Nothing being alleged to the contrary in the answer, it must be assumed in this case that the complainant is the original and first inventor of that improvement, and if so, the court is of the opin-

ion that the charge of infringement is proved by the evidence in the case.

Decree in favor of the complainant for an account and for an injunction.